UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GAR DISABILITY ADVOCATES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PAMELA S. TAYLOR,<br><br>Defendant. | No. 17-cv-3038 (KM)(MAH)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff GAR Disability Advocates, LLC ("GAR") has brought this action against one of its former employees, defendant Pamela S. Taylor, for breach of contract and for various forms of equitable relief. Taylor has filed a counterclaim for breach of contract, seeking monetary damages.

Now before the court is GAR's motion to dismiss Taylor's counterclaim and to compel arbitration. For the reasons expressed herein, GAR's motion to compel arbitration is granted. (DE 24). However, because the arbitration provision covers all disputes arising from the agreements at issue, I find that both GAR's and Taylor's complaints are arbitrable. GAR's motion to amend to the complaint is denied as moot.

### I. Background

GAR is an organization that assists individuals that are either applying for or receiving Social Security Disability Benefits ("SSDI") or Supplemental Security Income ("SSI"). On February 26, 2015, GAR and Taylor entered into Asset Purchase and Sale Agreement (DE 5-1, "APS Agreement", ¶9).[1] Pursuant to the terms of this agreement, Taylor agreed to sell and assign her current and prospective SSDI and SSI cases to GAR. (APS Agreement ¶2). In return, GAR

---

[1]   "DE __" refers to the Docket Entry for this matter.

   "AC __" refers to the Amended Complaint (DE 5)

1

agreed to pay $275,000 for those "assets," and it alleges that it paid Taylor that amount on March 3, 2015. (*Id.* ¶¶15-16).

The APS Agreement addressed Taylor's right to seek the advice of an attorney prior to executing the agreement:

> Seller hereby acknowledges that she has been advised to retain her own attorney, was given adequate time to seek the advice of such attorney and that she has either done so or has voluntarily chosen not to seek such counsel. The parties acknowledge and agree that this Agreement was entered into an arm's length, without duress or coercion, and is to be interpreted as an agreement between two parties of equal bargaining strength.

(*Id.*, Representations and Warranties, ¶8(f)).

The APS Agreement contains an arbitration provision:

> Any disputes regarding this agreement shall be decided by arbitration before one (1) arbitrator. The parties shall first try to find a mutually agreeable arbitrator. If one cannot be found then they shall choose one arbitrator from a list provided by the American Arbitration Association with the costs to be paid by the losing party to the dispute. This Agreement shall be controlled by and interpreted in accordance with the laws of the State of New Jersey, without regard to any choice of law rules which may direct the application of laws of another jurisdiction.

(*Id.* ¶8(d)).

The APS Agreement referenced and attached as an exhibit an unexecuted copy of an Employment Agreement. (*Id.* ¶5). The APS Agreement provided that the parties would execute the attached Employment Agreement once the "assets" were transferred to GAR. (*Id.*).

On March 2, 2015, the parties executed the Employment Agreement. ("Employment Agreement", DE 5-2). Under the Employment Agreement, GAR agreed to employ Taylor as a "Case Manager/Advocate." Like the APS Agreement, the Employment Agreement contains an arbitration clause:

> Governing Law; Jurisdiction. Any disputes regarding this agreement shall be decided by arbitration before one (I) arbitrator. The parties shall first try to find a mutually agreeable arbitrator. If one cannot be found then they shall choose one arbitrator from a list provided by the American Arbitration Association with the

2

costs to be paid by the losing party to the dispute. This Agreement
shall be controlled by and interpreted in accordance with the laws
of the State of New Jersey, without regard to any choice of law
rules which may direct the application of laws of another
jurisdiction.

(Employment Agreement ¶ 15)

The Employment Agreement also contained non-disclosure, non-compete, and non-disparagement clauses. (*Id.* ¶¶8-10). In the event of a breach of any of those provisions, the contract provided that GAR could seek injunctive and equitable relief:

[T]he Employee acknowledges that, in the event of any breach or
threatened breach by the Employee of the provisions of Sections 8,
9 or 10, the Employer and its subsidiaries and affiliates shall be
entitled to temporary, preliminary and permanent injunctive or
other equitable relief against the Employee . . . and to an equitable
accounting of all earnings, profits and other benefits arising,
directly or indirectly, from such violation, which rights shall be
cumulative and in adding to (rather than instead of) any other
rights or remedies available at law or in equity.

(*Id.* ¶11). In the agreement, Taylor acknowledged that she "read and understands all of the terms of this Agreement," had "had an opportunity to consult with independent counsel with respect to the terms of this Agreement," and had "made such investigation of the facts pertaining to this Agreement and of all the matters pertaining hereto as she deems necessary." (*Id.* ¶24).

GAR claims that Taylor breached the non-disclosure, non-compete, and non-disparagement clauses of the Employment Agreement when she failed to assign new cases and clients to GAR, and held herself out as the primary representative to clients, instead of GAR. (AC ¶¶41-43). On April 7, 2017, GAR terminated Taylor's employment. (AC ¶44). The parties dispute whether this termination was with or without cause. Since Taylor's termination, GAR alleges, she has sent various emails to GAR, threatening to take employees and claimants, and to release confidential information. (AC ¶¶48, 50-51).

3

On May 20, 2017, GAR filed its original complaint seeking an injunction and equitable relief related to Taylor's alleged violation of the non-disclosure, non-compete, and non-disparagement clauses. (DE 1).

On May 30, 2017, GAR filed its Amended Complaint (DE 5), asserting four different causes of action: breach of the APS Agreement; breach of the Employment Agreement; temporary restraints/permanent injunction; and an accounting. (AC ¶¶ 52–76).

On June 16, 2017, Taylor filed an Answer to the Amended Complaint, which included a Counterclaim for breach of contract. (DE 7). Taylor asserts that she was not paid her salary, reasonable expenses, or compensation for unused vacation time, as required by her Employment Agreement. (*Id.*).

On July 14, 2017, GAR filed the original version of this motion to compel arbitration of Taylor's counterclaim. (DE 10). That motion was dismissed without prejudice so that the parties discuss whether they wished to proceed with arbitration. (DE 17). The parties failed to reach an agreement, however, and the motion to compel arbitration was renewed on May 16, 2018. (DE 24).

The Employment Agreement contains a choice of law provision, providing that it is governed by New Jersey law. Taylor's opposition to GAR's motion to compel relied almost exclusively upon the New Jersey Supreme Court case of *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306 (N.J. 2014), *cert. denied*, 135 S. Ct. 2804 (2015). (DE 26). Prior to the renewal of the motion to compel, however, the New Jersey Supreme Court granted certification in *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, a case that had the potential to affect the *Atalese* holding. *See* 231 N.J. 334, 175 A.3d 177 (N.J. Nov. 29, 2017) (granting certification).

Resolution of the motion to compel was held over pending a decision in *Kernahan*. On January 10, 2019, the New Jersey Supreme Court rendered its decision. *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, No. 079680, __ N.J. __, 2019 WL 166309, 2019 N.J. LEXIS 3 (Jan. 10, 2019). I granted leave to

submit supplemental briefing to address the effect of *Kernahan* (DE 31), and on January 25, 2019, both sides submitted supplemental briefs. (DE 32, 33).

## II. Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a strong federal policy in favor of arbitration. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178-79 (3d Cir. 1999) (noting that FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."). To achieve that aim, the FAA authorizes a party to enforce a valid arbitration agreement by moving to compel arbitration. 9 U.S.C. §§ 2-4; *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012).

Arbitration is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). When a district court is presented with a motion to compel arbitration, the Court must first determine whether the agreement to arbitrate is valid, and then decide whether the dispute falls within the agreement's scope. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009).

If the agreement at issue contains both a choice-of-law clause and an arbitration clause, the reviewing court will interpret the arbitration clause under the substantive law chosen by the parties. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (holding that application of state law identified in choice-of-law clause harmonizes choice of law clause and arbitration clause); *see also Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (noting that court applies "ordinary state-law principles that govern the formation of contracts.").

## III. Discussion

Taylor claims that the arbitration clause is not a valid agreement under New Jersey law because it does not contain an explicit waiver-of-rights

5

disclaimer as required by *Atalese, supra.* Taylor further claims that even if the arbitration clause is valid, GAR waived its right to arbitration by instituting this federal action.

### A. Enforceability of Arbitration Clause

Both the Employment Agreement and the APS Agreement have choice of law provisions that require the application of the substantive law of New Jersey. Under New Jersey law, a plaintiff's claims are subject to arbitration so long as the arbitration clause at issue gives sufficient "notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration." *Martindale v. Sandvik*, 800 A.2d 872, 884 (N.J. 2002). "An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" *Atalese*, 99 A.3d at 313 (citation omitted). "When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690 (N.J. 2010).

"An enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016) (citing *Atalese*, 219 N.J. at 442). "This requirement of a 'consensual understanding' about the rights of access to the courts that are waived in the agreement has led [New Jersey] courts to hold that clarity is required." *Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.*, 416 N.J. Super. 30, 37 (App. Div. 2010) (alteration added and citation omitted). This clarity of intent is required to "assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282 (1993); *see also Morgan*, 225 N.J. at 308 (noting that right to civil jury trial is guaranteed by New Jersey Constitution. (citing N.J. Const. art. I, ¶ 9)).

6

*Atalese*, the New Jersey Supreme Court case cited by both parties, held that "mutual assent" requires that parties to an arbitration agreement be placed on explicit notice that they are waiving their right to have claims adjudicated in a court of law. 219 N.J. at 442-43. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights," the Court held, but the "waiver-of-rights language . . . must be clear and unambiguous -- that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 443-45.

In *Atalese*, the plaintiff contracted with the defendant for debt-adjustment services. *Id.* at 435. The contract contained an arbitration provision for the resolution of any dispute between the parties, but the provision did not explicitly state that the plaintiff was waiving her right to seek relief in court:

> **Arbitration**: In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party. The parties shall agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be borne by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees.

*Id.* at 437. The plaintiff later sued, alleging violations of the Consumer Fraud Act, and the Truth-in-Consumer Contract, Warranty and Notice Act. The defendant moved to dismiss the complaint and compel arbitration. *Id.* at 436.

The Court held that the arbitration provision was unenforceable: "The absence of *any* language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision

7

unenforceable." *Id.* at 436 (emphasis in original). In reaching this conclusion, the Court recognized that mutual assent requires that the parties understand the "terms to which they have agreed." *Id.* at 442 (citing *Knorr v. Smeal*, 178 N.J. 169, 177 (2003) ("An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights.")). Thus, *Atalese* required that a waiver of rights clause "be clear and unambiguous." *Id.* at 444.

*Atalese* arose in the context of a consumer fraud action, involving an average member of the public. It is a truism, the Court observed, that "[b]y its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." Nevertheless, "an average member of the public may not know -- without some explanatory comment -- that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." *See id.* at 442. Subsequent cases have recognized the consumer-fraud context as a substantive limitation on the aplplicability of the "clear and unambiguous" standard announced in *Atalese*.[2]

---

2   *See Victory Entm't, Inc. v. Schibell*, 2018 N.J. Super. Unpub. LEXIS 1467, at *10-11, 21-23 (App. Div. June 21, 2018) (rejecting application of *Atalese*, and compelling arbitration where provision at issue simply stated that disputes "shall be submitted to binding arbitration" and contract at issue was not "a consumer contract" that involved "average members of the public"); *Columbus Circle NJ, LLC v. Island Constr. Co., LLC*, 2017 N.J. Super. Unpub. LEXIS 606, at *5-7 (App. Div. Mar. 13, 2017) (rejecting application of *Atalese* to contract at issue which was not "a consumer contract of adhesion where one party possessed superior bargaining power and was the more sophisticated party."); *Gold Mine Jewelry Shoppes, Inc. v. Lise Aagaard Copenhagen*, 240 F. Supp. 3d 391, 397 (E.D.N.C. 2017) (declining to apply *Atalese* to retailer agreement executed between two corporations); *Emcon Assocs. v. Zale Corp.*, No. 16-1985 (FLW), 2016 U.S. Dist. LEXIS 172721, at *1 (D.N.J. Dec. 14, 2016) (finding that *Atalese* has been limited to consumer and statutory employment discrimination contexts, and contract at issue involved commercial transaction between two sophisticated entities) (citing *Gastelu v. Martin*, 2015 N.J. Super. Unpub. LEXIS 1639, at *14 (App. Div. July 9, 2015) ("Parties to a commercial contract can express their intention to arbitrate their disputes rather than litigate them in court, without employing any special language. . . . In the present case . . . we are dealing with commercial business transaction and, therefore, the standard is not as stringent [as the one put forward in *Atalese*].")); *cf. Van Duren v. Rzasa-Ormes*, 394 N.J. Super. 254, 257 (App. Div. 2007) (enforcing arbitration agreement "between two sophisticated business parties, each represented by counsel"), *aff'd o.b.*, 195 N.J. 230 (2008).

8

In the recently decided *Kernahan* case, the New Jersey Supreme Court stopped short of a categorical ruling that the rule in *Atalese* applies only to consumer contracts. Still, it relied very heavily on the "consumer fraud" aspect of *Atalese*. *See* 2019 N.J. LEXIS at *27-28.[3]

*Kernahan,* as it happened, did involve a consumer contract. It held that the arbitration clause at issue was "too confusing and misleading to meet simple plain wording standards demanded by the public policy of this state for consumer contracts." *Id.* at *31. In particular, the arbitration provision was located within a section labeled "MEDIATION"; used such small font that it violated the font size requirements of New Jersey's Plain Language Act; and contained confusingly contrary terms. *Id.* at *32-33. The Court summarized its bases for holding the provision unenforceable as follows: "(1) the inconspicuous location of the agreement to arbitrate under a section labeled 'MEDIATION'; (2) its small-font text and confusing ordering of sentences; and (3) the invocation of the Commercial Mediation Rules." *Id.* at *36.

The *Kernahan* decision built on *Atalese*, which, it noted, involved "the enforceability of an agreement to arbitrate in a *consumer* contract for debt-adjustment services." *Id.* at *27 (emphasis added). The *Atalese* decision, as *Kernahan* saw it, was guided "by twin concerns":

> First, the Court was mindful that a *consumer* is not necessarily versed in the meaning of law-imbued terminology about procedures tucked into form contracts. . . . The decision repeatedly notes that it is addressing a form *consumer contract, not a contract individually negotiated in any way*; accordingly, basic statutory *consumer contract requirements* about plain language implicitly provided the backdrop to the contract under review.
>
> And, second, the Court was mindful that plain language explanations of consequences had been required in contract cases

---

3     The defendants in *Kernahan* withdrew their earlier argument that the standard in *Atalese* was preempted by the FAA and in conflict with the United States Supreme Court's recent decision in *Kindred Nursing Ctrs. L.P. v. Clark*, 137 S. Ct. 1421, 1426 (2017) (holding that Kentucky's "clear-statement rule" violated FAA by holding arbitration agreements to a higher standard than other contracts). 2019 N.J. LEXIS at *11, 20, 35. As a result, the Court did not rule on the issue. *Id.* at *11.

in numerous other *settings where a person would not be presumed to understand* that what was being agreed to constituted a waiver of a constitutional or statutory right.

2019 N.J. LEXIS at *28-29 (emphasis added). In *Atalese,* the *Kernahan* Court reiterated, "[t]he consumer context of the contract mattered." *Id.* at *28. *See also id.* at *29 (reviewing "consumer contract language" in determining "whether there was mutuality of assent to form an agreement to arbitrate"); *id.* at *29 ("In New Jersey, we have a Plain Language Act that imposes certain simple principles on consumer contracts generally -- to wit, they must use plain language that is commonly understood by the wide swath of people who comprise the consuming public."); *id.* at *31 ("*Atalese* stands for the proposition that an arbitration agreement is clearly enforceable when its terms affirmatively state, or unambiguously convey to a consumer in a way that he or she would understand, that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum."); *id.* at *38 (holding that the provision at issue was unenforceable because "a lay consumer" could not be expected "to parse through the contents of this small-font provision to unravel its material discrepancies."). If the New Jersey Supreme Court has not yet declared a consumer contract to be an absolute prerequisite to the application of the *Atalese* "explicit waiver" rule, it has been elevated to the status of a very critical factor.

GAR and Taylor, the parties here, are not "average member[s] of the public." Neither the APS Agreement nor the Employment Agreement at issue here was a "consumer contract." Neither Agreement was a contract of adhesion that was "not . . . individually negotiated in any way." *See Atalese,* 219 N.J. at 442, *Kernahan,* 2019 N.J. LEXIS at *28-29. Taylor worked as a non-attorney advocate for clients seeking social security disability benefits. (DE 10-2 ¶4). Prior to the execution of the Employment Agreement, Taylor and GAR executed an Asset Purchase and Sale Agreement whereby Taylor sold her business assets to GAR, in exchange for $275,000 — a sophisticated commercial agreement between people in the same business. In both the APS Agreement

and Employment Agreement, Taylor represented and warranted that she understood the agreements and had had the opportunity to speak with an attorney. In short, this was very far from being a "setting[] where a person would not be presumed to understand" that the right to a civil trial was being waived. *Kernahan*, 2019 N.J. LEXIS at *29.

Presented with the issue, I think that the New Jersey Supreme Court would hold that the more exacting standard of *Atalese* does not apply here. Most persuasive in this context are cases compelling arbitration where the clause at issue, while not explicitly waiving a jury right, is nonetheless held enforceable because the parties were involved in sophisticated negotiations, and were not average consumers confronted with an adhesion contract. *E.g., Victory Entm't, Inc.*, 2018 N.J. Super. Unpub. LEXIS at *10-11, 21-23 (compelling arbitration where provision at issue stated that disputes "shall be submitted to binding arbitration" and contract at issue was not "a consumer contract" that involved "average members of the public"); *see also* n.2, *supra*, and cases cited.

These Agreements clearly and unambiguously indicate the intention of the parties to submit any disputes regarding the contracts to arbitration. In this commercial context, no more is required. I find that the arbitration clauses are valid, binding, and enforceable.[4]

---

[4] Taylor has proffered a supplemental certification, wherein she claims that she was not advised by GAR or by counsel of the arbitration clause and that she did not understand that she was waiving her right to a jury trial. (DE 32-1). This belated certification was submitted after the parties were invited to submit supplemental briefing only to address the impact of *Kernahan*. In any event, under "New Jersey law . . . a defendant has no obligation to alert a plaintiff to an arbitration provision (or any other provision) that is contained within the contract that the plaintiff is signing." *Bacon v. Avis Budget Grp., Inc.*, 2018 U.S. Dist. LEXIS 207474, at *42 (D.N.J. Dec. 7, 2018) (citing *Gras v. Assocs. First Capital Corp.*, 346 N.J. Super. 42, 56 (App. Div. 2001) ("Failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.")). I note also that the certification is defective as to form. It omits the statutorily required provision that it is submitted "under penalty of perjury." 28 U.S.C. § 1746; *see also United States v. Branella*, 972 F. Supp. 294, 299 (D.N.J. 1997) (rejecting nonconforming certification, noting that "[c]ritical in the statutory prerequisite is the phrase 'under penalty of perjury,' as the purpose of 28 U.S.C. 1746 is to set the stage for a federal prosecution

I next address the scope of the arbitration provisions.

Taylor's counterclaim for breach of contract clearly and explicitly arises from the Employment Agreement. (Counterclaim, DE 7 at 10–11, ¶¶ 1–17). The arbitration clause in that Employment Agreement broadly applies to "[a]ny disputes regarding this agreement." Accordingly, Taylor's counterclaim for breach of contract would fall within that provision, and is arbitrable.

I next address the issue of whether GAR's federal court complaint falls within the scope of the arbitration clause(s), an issue not clearly addressed by the parties.

GAR's first two causes of action are clearly arbitrable. The first cause of action alleges breach of contract, based on the APS Agreement, and alleges that GAR "has sustained monetary damages in an amount to be determined at trial." (AC ¶¶ 52-56). The second cause of action alleges breach of contract, based on the Employment Agreement, and asserts that "GAR has sustained monetary damages in an amount to be determined at trial." (AC ¶¶57-60). Those two Agreements, as we have seen, contain substantially similar arbitration provisions covering "disputes regarding this agreement." That language clearly covers claims for damages based on breach of those very Agreements. Those claims for breach of contract would also fall (possibly unwittingly) within the scope of GAR's request on this motion that "an Order be entered directing the parties to proceed into arbitration with regard to any and all claims for money damages arising out of the Employment Agreement and/or the Asset Purchase and Sale Agreement." (DE 24-2 ¶ 20).[5]

---

in the event of falsity."); *Pagan v. Holder*, 741 F. Supp. 2d 687, 694 n.11 (D.N.J. 2010) (rejecting certification that "is neither a sworn affidavit nor an unsworn declaration made under penalty of perjury, pursuant to 28 U.S.C. § 1746."). This certification therefore would not properly be before the court even if relevant and timely submitted.

[5] I say "unwittingly" because GAR seems to be of the impression that only Taylor is asserting claims at law for damages. That impression is mistaken. While GAR's original complaint asserted only claims for equitable relief, Counts 1 and 2 of the Amended Complaint assert claims at law for breach of contract, and seek monetary damages. GAR, if the matter is not referred to arbitration, moves in the alternative that it should be permitted to amend its complaint to assert claims at law for damages.

12

GAR's amended complaint also seeks equitable relief, in the form of an injunction and an accounting (the third and fourth counts). (AC ¶¶ 61-76). GAR contends that injunctive relief is carved out from the scope of the arbitration provisions. In support of that proposition, GAR cites the following provision in the Employment Agreement:

> [T]he Employee acknowledges that, in the event of any breach or threatened breach by the Employee of the provisions of Sections 8, 9 or 10, the Employer and its subsidiaries and affiliates shall be entitled to temporary, preliminary and permanent injunctive or other equitable relief against the Employee . . . and to an equitable accounting of all earnings, profits and other benefits arising, directly or indirectly, from such violation, which rights shall be cumulative and in adding to (rather than instead of) any other rights or remedies available at law or in equity.

(DE 5-2, ¶11).

Nothing in that provision addresses the scope of arbitration or purports to negate or limit the arbitration provision. The quoted provision does no more than ensure the availability of remedies traditionally classified as equitable. It specifies forms of relief, but says nothing about the forum in which they will be sought. The arbitration provisions in the Agreements explicitly invoke the procedures of the American Arbitration Association. The AAA Rules permit an arbitrator to grant (1) "any remedy or relief that would have been available to the parties had the matter been heard in court," as well as (2) interim and interlocutory relief. American Arbitration Association, *Employment Arbitration Rules and Mediation Procedures*, Rule 39 (Nov. 1, 2009).[6] In short, a reference to equitable relief should not be deemed to rule out arbitration by implication.

The arbitration provisions cover all disputes that arise from any breach of the APS or the Employment Agreement, without limitation as to the remedy

---

(*See, e.g.*, DE 24-2 ¶¶ 20, 22). The premise of that request would seem to be that, before now, GAR has not asserted such legal claims—but it has.

6   The AAA Rules are publicly available. *See* www.adr.org/sites/default/files/EmploymentRules_Web2119.pdf

sought. The claims in GAR's complaint and Taylor's counterclaims fit comfortably within that definition, and are therefore arbitrable.

## B. Waiver

I next address whether GAR waived its right to arbitrate by filing its complaint in federal court.

Actively litigating a case on the merits can result in waiver where it causes prejudice to the other party. *See Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975) ("We believe it is not the inconsistency of a party's actions, but the presence or absence of prejudice which is determinative of the issue of waiver.") (internal quotations and citation omitted), *overruled on other grounds by Zosky v. Boyer*, 856 F.2d 554 (3d Cir. 1988); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (noting that "waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery") (internal quotation and citation omitted)); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992) (providing non-exclusive list of factors relevant to prejudice inquiry, including: (1) timeliness of motion to arbitrate; (2) degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of its intent to arbitrate even if it has not yet filed a motion to compel; (4) the extent of its non-merits motion practice; (5) its assent to the district court's pretrial orders; and (6) the extent to which both parties have engaged in discovery).

Nothing approaching the requisite level of prejudice is present here. The parties have not engaged in any discovery or substantive motions addressing the merits of the claims. *See Gavlik Constr.*, 526 F.2d at 783 ("[M]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver[.]"). It does not appear from the docket that there has even been an

initial Rule 16 conference, although the parties have filed a discovery plan. (DE 25)

While the motion to compel arbitration was pending, not much occurred in the way of court proceedings. *See Hoxworth*, 980 F.2d at 925 (finding waiver where parties litigated case for one year, which included participating in numerous pretrial conferences, filing motion to dismiss for failure to state a claim, motion to disqualify plaintiff's counsel, engaging in formal discovery, including written discovery, depositions, and discovery motion practice); *Esaka v. Nanticoke Health Servs.*, 752 F. Supp. 2d 476, 485 (D. Del. 2010) (granting motion to compel arbitration where there had been no exchange of discovery, Rule 16 conference, or substantive motions); *United States ex rel. Duo Metal & Iron Works, Inc. v. S.T.C. Constr. Co.*, 472 F. Supp. 1023, 1025 (E.D. Pa. 1979) (finding waiver where plaintiff expended "considerable effort and expense in conducting . . . discovery" for nineteen months prior to filing motion to compel arbitration).

GAR filed its original complaint in this court seeking only equitable relief, in the evident belief that equitable claims were not arbitrable. (*See* DE 24-1). Taylor's answer to the Amended Complaint included counterclaims at law for damages. That apparently was the catalyst for GAR's filing of its original motion to compel arbitration on July 14, 2017. (DE 10). That motion to compel arbitration was confined to claims at law.

GAR has consistently sought arbitration of all claims to which it believed the arbitration clauses applied. Both sides at least entertained the idea of arbitrating all claims; on consent, Magistrate Judge Hammer administratively terminated the motion so that the parties could discuss dismissal of the action and arbitration on consent, or in the alternative return to court to seek a scheduling order. (DE 17).

I conclude that GAR has not, by its litigation conduct, waived its right to arbitrate, and has not caused Taylor to suffer any prejudice in the interim.

15

## IV. Conclusion

GAR's motion to compel arbitration (DE 24) is granted. All claims and counterclaims will be referred to arbitration. In the meantime, this action will be administratively terminated without prejudice. GAR's request to amend the complaint, as an alternative ground for relief, is denied as moot.

Dated: February 6, 2019

Kevin McNulty
United States District Judge